IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **APRIL DAWN HOBBS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 22-cv-239-DES |
| | ) |
| **MARTIN O'MALLEY,**[1] | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff April Dawn Hobbs ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.     Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Although the claimant bears the burden of proof through step four, the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II. Claimant's Background and Procedural History

In October 2015, Claimant applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Act. (R. 355-62). Claimant alleges she has been unable to work since July 9, 2014, due to migraine headaches, a bulging disk, bleeding problems, anxiety, depression, problems with her bones, osteoporosis, and bilateral shoulder problems. (R. 355, 357, 404, 1077). Claimant was 46 years old on the date of the ALJ's decision. (R. 355, 357, 1101). She has a ninth-grade education and past work as a certified nurse's assistant. (R. 1118, 1131).

Claimant's claims for benefits were denied initially and on reconsideration, and she requested a hearing. (R. 106-59, 178-80). ALJ James Bentley conducted an administrative hearing and issued a decision on September 20, 2017, finding Claimant not disabled. (R. 15-30, 39-72). The Appeals Council denied review, and Claimant appealed to the United States District Court for the Eastern District of Oklahoma. (R. 1-6, 1174-75). The Court reversed the ALJ's decision and remanded the case on March 16, 2020. (R. 1210-28). On remand, ALJ Bentley conducted an administrative hearing and issued a decision on October 15, 2020, again finding Claimant not disabled. (R. 1076-1101, 1114-40). Claimant filed written exceptions to this second unfavorable decision. (R. 1399-1407). On June 22, 2022, the Appeals Council determined Claimant's written exceptions did not provide a basis for changing the ALJ's decision, rendering ALJ Bentley's October 2020 decision the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.984(b)(2), 416.1484(b)(2). Claimant filed this appeal on August 25, 2022. (Docket No. 2).

### III. The ALJ's Decision

In his decision, the ALJ found Claimant last met the insured requirements for Title II purposes on September 30, 2016. (R. 1079). The ALJ then found at step one that Claimant had not engaged in substantial gainful activity since the alleged onset date of July 9, 2014. (*Id.*). At step two, the ALJ found Claimant had severe impairments of prior cumulative trauma to the right shoulder resulting in abnormalities due to internal derangement with impingement syndrome; lumbar spine degenerative disc disease with lumbago and chronic left-sided low back pain without sciatica; osteoporosis; epicondylitis of the right arm/elbow; plantar callosity; fibromyalgia; chronic obstructive pulmonary disease ("COPD"); migraines without aura and without status migrainosus not intractable; left distal radius fracture, status post internal fixation; left carpal tunnel syndrome, status post release; bipolar I disorder; major depressive disorder, recurrent, moderate to severe without psychosis; panic disorder with agoraphobia; anxiety; social phobia; obsessive compulsive disorder; obsessive compulsive personality disorder; and posttraumatic stress disorder ("PTSD") secondary to childhood and spousal physical abuse history. (*Id.*). The ALJ found Claimant's gastroesophageal reflux disease ("GERD"), estrogen deficiency, and gastritis were non-severe. (R. 1080). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 1080-84).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following non-exertional limitations:

> occasional overhead reaching and lifting with the right upper extremity, and with occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; and frequent, but not constant, handling and fingering with the left upper extremity. She must avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas. She is able to understand, remember, and apply simple and detailed multistep instructions, make simple and detailed work decisions, and

>concentrate and persist for extended periods in order to complete simple and detailed multistep work tasks with routine supervision. She would be capable of interacting with and responding appropriately to coworkers and supervisors in a stable work setting. However, she would be limited to occasional work-related interaction with the general public. She is able to adapt to a routine work setting where changes are infrequent, well-explained, and introduced gradually.

(R. 1084). The ALJ provided a summary of the evidence that went into this finding. (R. 1084-98).

At step four, the ALJ concluded that Claimant could not return to her past relevant work. (R. 1099). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including small products assembler, inspector and hand packager, and power-screwdriver operator. (R. 1099-1100). Accordingly, the ALJ concluded Claimant was not disabled. (R. 1101).

**IV.    Issues Presented**

Claimant purports to raise a single point of error in her challenge to the Commissioner's denial of benefits: the ALJ failed to provide a narrative discussion explaining the RFC assessment. (Docket No. 15 at 5). However, in the body of her brief, Claimant attempts to raise a litany of errors, many of which are poorly developed. The Court is able to discern the following additional arguments, which it re-organizes for clarity: (1) the ALJ improperly evaluated the medical source opinions of consultative examiners Dr. Stephen Wilson and Dr. Christopher Sudduth; (2) the ALJ improperly evaluated the medical source opinions of the state agency psychologists; (3) the ALJ failed to account for Claimant's plantar callosity and bipolar I disorder when forming the RFC; (4) the ALJ failed to consider the combined effect of all her impairments in forming the RFC; and (5) the ALJ improperly assessed a less restrictive RFC on remand than he assessed in his initial decision.  The Court finds no reversible error in the ALJ's decision.

V.      **Analysis**

    A.      **ALJ Properly Evaluated the Medical Source Opinion Evidence**

For claims filed before March 27, 2017, the weight given to a medical opinion depends, in part, on its source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Medical opinions from sources who examined the claimant, such as consultative examiners, generally receive more weight than non-examining medical sources. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Nonetheless, the ALJ must "consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) (citation omitted). Those factors are: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship and frequency of examination; (3) the degree to which the medical source provides relevant evidence to support the opinion; (4) the opinion's consistency with the record as a whole; (5) the medical source's specialization; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). When evidence is inconsistent, the ALJ has the discretion to weigh the conflicting evidence to determine whether the claimant has shown she is disabled. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1520b(b), 416.920b(b). The ALJ's findings are conclusive when they are supported by substantial evidence. 42 U.S.C. § 405(g).

        1.  **Dr. Wilson's Consultative Examination**

Dr. Wilson performed a consultative examination of Claimant on May 17, 2018, in connection with Claimant's worker's compensation claim for an injury to her right shoulder. (R. 1626-31). On physical examination of Claimant's right shoulder, Dr. Wilson found tenderness to palpation, restricted range of motion in all planes, weakness in all major muscle groups, crepitation, atrophy, a positive impingement sign, and a positive supraspinatus press test.

(R. 1629). Based on these findings, as well as Claimant's previous shoulder surgeries, Dr. Wilson concluded Claimant's total shoulder impairment amounted to 79.5%. (*Id.*). He opined that Claimant was temporarily totally disabled from June 6, 2017, through April 30, 2018. (*Id.*). Dr. Wilson further opined that although Claimant was unable to perform her prior work duties, she was an excellent candidate for vocational rehabilitation for a job consistent with the sedentary demand category identified by Dr. Kevin Hargrove's April 2018 Functional Capacity Evaluation.[2] (R. 1630).

The ALJ thoroughly summarized Dr. Wilson's consultative examination findings in his written opinion. (R. 1091). The ALJ gave diminished weight to Dr. Wilson's opinions that Claimant was temporarily totally disabled, had a 79.5% permanent partial impairment to her right shoulder, was unable to perform her past work, and was an excellent candidate for vocal rehabilitation to train her in a sedentary job as identified by Dr. Hargrove. In support of this conclusion, the ALJ correctly stated that an opinion as to the ability to perform past relevant work or the overall issue of disability are findings reserved to the Commissioner and that the Social Security Administration does not evaluate disability in terms of percentages. (R. 1096).

Claimant nonetheless asserts the ALJ focused on Dr. Wilson's opinion that Claimant was disabled and ignored the other relevant information from his examination as well as the "concrete limitations" he identified. (Docket No. 15 at 12). Claimant's arguments are belied by the record.

It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to h[is] position while ignoring other evidence." *Hardman v.*

---

[2] Dr. Hargrove's April 2018 examination findings and Functional Capacity Evaluation are not contained in the record, rather, they are simply referenced in Dr. Wilson's report. According to Dr. Wilson, Dr. Hargrove released Claimant at maximum medical improvement on April 30, 2018, with the permanent restriction of "work in a sedentary physical demand category, exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects." (R. 1628).

*Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). However, the ALJ is not required to discuss each piece of evidence in the record in detail. *See id.* at 1009-10. ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Although the ALJ did not specifically reference Dr. Wilson's finding regarding Claimant's right shoulder muscle atrophy, he did thoroughly discuss Dr. Wilson's consultative examination where such finding was recorded, noting Claimant's decreased range of motion, weakness, crepitation, and down-sloping with respect to her right shoulder. (R. 1091). Moreover, the ALJ identified prior cumulative trauma to the right shoulder resulting in abnormalities due to internal derangement with impingement syndrome as a severe impairment at step two and specifically explained that he included reaching limitations in the RFC to account for Claimant's right shoulder impairment. (R. 1079, 1097). Claimant fails to explain how Dr. Wilson's findings demonstrate greater RFC limitations than the ALJ identified. Because Claimant points to no evidence the ALJ failed to consider, her arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted)).

In sum, the ALJ summarized Dr. Wilson's consultative examination findings, identified degenerative joint disease as a severe impairment at step two, and explained that he included

reaching limitations in the RFC to account for Claimant's degenerative joint disease. The ALJ was not required to do more.

### 2. Dr. Sudduth's Consultative Examination

Dr. Sudduth performed a physical consultative examination of Claimant on November 15, 2018. (R. 1652-60). Dr. Sudduth observed Claimant had corns on her left foot and was unable to squat, toe walk, or stand and balance on one foot. (R. 1655). Dr. Sudduth found decreased range of motion in Claimant's lumbar spine with pain on assessment, a positive straight leg raise test bilaterally, and 70% range of motion in her right shoulder. (*Id.*). Dr. Sudduth's consultative examination findings were otherwise normal, including a symmetric, steady gait; an unassisted gait; normal muscle strength, bulk, and tone in all muscles assessed; intact ability to rise from a sitting position without assistance; intact ability to heel walk with ease; and no difficulty getting up and down from the exam table. (R. 1655-60).

In his written opinion, the ALJ thoroughly summarized Dr. Sudduth's consultative examination findings. (R. 1091). Notably, although Dr. Sudduth made numerous clinical findings, he did not identify any functional limitations associated with such findings. Thus, the ALJ did not evaluate Dr. Sudduth's consultative examination findings using the factors from 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6) set forth above. Rather, the ALJ relied on Dr. Sudduth's findings, in part, to give diminished weight to Dr. Hargrove's opinion that Claimant was limited to sedentary work. (R. 1096). Specifically, the ALJ found Dr. Hargrove's opinion inconsistent with Dr. Sudduth's findings that Claimant had an unassisted gait; normal muscle strength, bulk, and tone; grossly intact cranial nerves; and intact sensation to light touch, noting that Dr. Sudduth's findings were not given undue emphasis, but rather were "representative of longitudinal examination findings by other providers." (*Id.*). The ALJ further noted the findings of 5/5 strength

and normal muscle bulk and tone in the record were inconsistent with the disuse atrophy that would be expected if Claimant was as functionally limited as Dr. Hargrove indicated. (*Id.*). Finally, the ALJ found Dr. Sudduth's examination findings were more consistent with Claimant's ability to engage in line dancing in February 2020 as well as the August 2020 treatment note indicating that Claimant was engaging in activities that compelled her to assure her surgeon that she was wearing her wrist brace and being careful to not fall or hit her left wrist while participating in such activities. (R. 1096, 2054).

Claimant appears to assert Dr. Sudduth's clinical findings are inconsistent with the RFC exertional limitation of light work. (Docket No. 15 at 13). Because Claimant points to no aspect of Dr. Sudduth's consultative examination that the ALJ overlooked, her arguments once again amount to a request that the Court reweigh the evidence, which it cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]") (citation omitted).

Moreover, in arriving at Claimant's RFC, the ALJ discussed Claimant's testimony and the findings of her treating, consultative, and reviewing physicians. (R. 1084-1098). The ALJ then explained how such evidence supported the limitations he included in the RFC assessment. Not only did the ALJ explain why he did not adopt the medical opinions that were more restrictive than the RFC, he also explained why he did not adopt the less restrictive medical source opinions. Thus, the ALJ did not "pick and choose" the evidence that was favorable to his position, but rather appropriately considered and weighed all the evidence, including Dr. Sudduth's consultative examination findings.

10

### 3. The State Agency Psychologists' Opinions

State agency psychologist Mary Rolison, Ph.D., completed a mental RFC assessment on December 2, 2015. (R. 115-17). Dr. Rolison found Claimant could perform simple and some complex tasks,[3] relate to others on a superficial work basis, and adapt to a work situation, but she could not relate to the general public. (R. 117). State agency psychologist Joy Kelly, Ph.D., affirmed Dr. Rolison's findings on review. (R. 144).

After the review completed by Drs. Rolison and Kelly, but before the review completed by Drs. Eckert and Gunter, Dr. Kathleen Ward performed a consultative mental status examination on October 15, 2018. (R. 1646-50). Claimant's thought processes were logical and organized and her speech was spontaneous, with typical tone, rate and volume. (R. 1648). Dr. Ward found Claimant had no bizarre thought content or evidence of delusional thought, and was oriented to time, date, and place. (*Id.*). Concentration and memory testing revealed Claimant could complete serial sevens, serial threes through thirty, spell "world" forward and in reverse, recall three out of three items immediately and two out of three items after five minutes, and interpret some common proverbs. (*Id.*). Dr. Ward opined that Claimant had "some limited deficits" in social judgment and problem solving, but that there was no significant evidence that Claimant may be incompetent to handle any funds awarded. (R. 1649). She assessed Claimant with, *inter alia,* PTSD secondary to childhood and spousal physical abuse history and major depressive disorder, recurrent, moderate to severe without psychosis. (*Id.*).

State agency psychologist Laura Eckert, Ph.D., completed a mental RFC assessment on December 3, 2018. (R. 1187-89). Likewise consistent with semi-skilled work, Dr. Eckert found Claimant could understand, remember, and carry out simple and some, but not all, more detailed

---

[3] These mental demands are consistent with semi-skilled work, which, by definition, requires "some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b).

instructions under routine supervision; could relate to others in an incidental manner for work-related purposes but would do best with no public interaction; and could adapt to change with forewarning. (R. 1189). On review, state agency psychologist Jason Gunter, Ph.D., affirmed Dr. Eckert's social and adaptability findings, but with respect to skill level, Dr. Gunter found Claimant could only perform simple tasks of 1-2 steps with routine supervision.[4]

As part of his analysis of the medical source opinion evidence, the ALJ gave partial weight to the opinions of Drs. Rolison, Kelly, Eckert, and Gunter for varying reasons. (R. 1097). As relevant to this appeal, the ALJ adopted the opinions of Drs. Rolison, Kelly, and Eckert that Claimant could perform semi-skilled work and, therefore, included a limitation to simple and detailed multistep instructions with routine supervision in the RFC. (R. 1084, 1098). In reaching this conclusion, the ALJ explained that a limitation to semi-skilled work was more consistent with the longitudinal mental status examinations of record.[5] (R. 1097-98). The ALJ thus rejected Dr. Gunter's opinion that Claimant was limited to unskilled work.

Plaintiff argues the ALJ erred by relying on the opinions of Drs. Rolison, Kelly, and Eckert as substantial evidence for his finding that Claimant could perform semi-skilled work. As to Drs. Rolison and Kelly, Claimant specifically asserts they rendered their opinions without the benefit of Dr. Ward's October 2018 consultative mental status examination. (Docket No. 15 at 7-8). However, Dr. Ward's consultative examination findings do not demonstrate a material change or worsening of Claimant's mental condition such that Dr. Rolison and Dr. Kelly's opinions became stale. Claimant's mental health treatment consisted of medication management for anxiety and/or

---

[4] These mental demands are consistent with unskilled work, which, by definition, requires "little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[5] The ALJ thoroughly discussed the mental status examinations of record earlier in his decision as part of his discussion of the paragraph B criteria at step three. (R. 1081-84).

depression by her primary care providers between 2014 and 2016. (R. 544-80, 591-98, 749-71, 788-800). Claimant also received sporadic mental health treatment for anxiety and depression at Carl Albert Community Mental Health Center in June 2016 (R. 810-14) and August 2016 (R. 807-09), but after missing scheduled appointments in December 2016 (R. 1029) and July 2017 (R. 1027), she was discharged from treatment due to noncompliance. (R. 1042-44). Although Drs. Rolison and Kelly were unaware of Dr. Ward's consultative examination, they were clearly aware of Claimant's anxiety and depression. Therefore, there was no material change rendering their opinions stale. *See Tarpley v. Colvin,* 601 F. App'x 641, 644 (10th Cir. 2015) (finding the ALJ did not err by giving significant weight to a state agency physician's opinion that was provided prior to availability of subsequent medical records, in part, because "nothing in the later medical records . . . supports . . . a material change in [the claimant's] condition that would render [the physician's] opinion stale"). Moreover, Dr. Eckert *did* specifically consider Dr. Ward's consultative examination and *still* found Claimant capable of performing semi-skilled work. (R. 1183-84, 1187-89). As discussed below, the ALJ's reliance on Dr. Eckert's opinion is supported by substantial evidence. In any event, the ALJ himself also thoroughly considered Dr. Ward's consultative examination at step three and as part of the RFC discussion. (R. 1082-83, 1092).

Regarding Dr. Eckert's opinion, Claimant asserts Dr. Eckert failed to cite relevant information from Dr. Ward's consultative examination, specifically, Claimant's suicidality, difficulty with social judgment, difficulty with memory, borderline intellectual functioning,[6] and difficulty interpreting basic phrases. As the Commissioner correctly points out, Dr. Eckert did specifically consider Claimant's suicidality, ninth-grade education, and agoraphobia. (R. 1182-

---

[6] The Court notes Dr. Ward did not diagnose Claimant with borderline intellectual functioning. Rather, she "estimated" her intelligence quotient "to be above 70, likely in the borderline to perhaps lower average ranges." (R. 1649).

13

83). Notably, even the ALJ himself is not required to discuss each piece of evidence in the record in detail. *See Clifton,* 79 F.3d at 1009-10. ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). It is clear from the record that Dr. Eckert considered Dr. Ward's consultative examination, despite not noting every finding in detail. Most importantly, however, the ALJ considered Claimant's suicidality, social skills, and cognitive skills, when evaluating the consistency of Claimant's subjective symptoms with medical and other evidence in the record, and Claimant does not challenge such findings. Accordingly, the ALJ's decision to limit Claimant to semi-skilled work in the RFC is supported by substantial evidence.

Nonetheless, even assuming *arguendo* that the ALJ erred by limiting Claimant to semi-skilled work as identified by Drs. Rolison, Kelly, and Eckert, rather than unskilled work as identified by Dr. Gunter, such error would be harmless since all the jobs identified by the VE and the ALJ at step five are unskilled. *See, e.g., Lester v. O'Malley,* Case No. 23-CV-94-GLJ, 2024 WL 1303891, at *6 (E.D. Okla. March 27, 2024) ("[B]ecause the jobs identified could be performed by Claimant regardless of whether the ALJ adopted the state agency's more restrictive limitation, the ALJ's failure to properly evaluate the medical opinions of [the state agency physicians] was harmless.").

    **B.**    **ALJ Accounted for Claimant's Impairments and Limitations and Provided a Sufficient Narrative Discussion**

Claimant asserts the ALJ violated Social Security Ruling ("SSR") 96-8p by failing to explain how the medical and non-medical evidence supports his determination that Claimant could perform light work. (Docket No. 15 at 6, 8, 10, 14). Claimant further asserts the ALJ erred in his RFC assessment because he failed to account for limitations related to her plantar callosity and

14

bipolar I disorder. (Docket No. 15 at 10-12). Additionally, Claimant asserts the ALJ failed to consider the combined effect of all her impairments. (Docket No. 15 at 5, 10-11).

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week, despite her medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). As part of the RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. Stated differently, the ALJ must explain the basis for the limitations included in the RFC, with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* Furthermore, if the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

The ALJ's decision satisfies these narrative requirements. The ALJ thoroughly discussed Claimant's testimony from both administrative hearings, the Third-Party Function Reports completed by Claimant's friend and son, and the findings of her treating, consultative, and reviewing physicians in the RFC discussion. (R. 1084-98). In discussing the opinion evidence regarding Claimant's exertional limitation to light work, the ALJ gave significant weight to: (1) treating surgeon Dr. Mac Moore's opinion that Claimant could lift 25 to 35 pounds; (2) treating physician Dr. Robert Remondino's opinion that claimant could lift 20 pounds; and (3) state agency physicians Drs. Joseph Michalcik, Sean Neely, Matheen Khan, and Karl Boatman's opinion that Claimant could lift and/or carry 20 pounds occasionally and 10 pound frequently, stand and/or walk about six hours in a workday; and sit about six hours in a workday. (R. 1093-97). In reaching this conclusion, the ALJ noted the treating physicians' opinions were consistent with their own

15

examination findings, the diagnostic imaging of record, and Dr. Sudduth's consultative examination, and that they were both specialists within their respective fields. (R. 1093-94). The ALJ then noted the state agency physicians' exertional limitations accounted for Claimant's lumbar spine complaints and were consistent with the longitudinal findings of record showing a normal gait without the need for an assistive device, intact cranial nerves, full muscle strength, and intact sensation. (R. 1097). As to Claimant's overhead reaching limitation, the ALJ noted Dr. Moore's "restricted reaching" limitation was vocationally non-specific, but nonetheless found it well-supported by his own examination findings and consistent with Dr. Sudduth's finding that Claimant had 70% range of motion in her right shoulder. (R. 1094). The ALJ specifically explained that he included an overhead reaching limitation to account for Claimant's right shoulder given her longitudinal examination findings, Dr. Moore's opinion and findings, and her right shoulder diagnostic imaging. (R. 1097). As to her postural limitations, the ALJ explained that he deferred to the opinions of state agency physicians Drs. Michalcik and Neely because such limitations were consistent the Claimant's lumbar spine complaints, other pain complaints, and examination findings of musculoskeletal tenderness and reduced lumbar spine range of motion. (*Id.*). The ALJ then explained that he included a handling and fingering limitation to account for Claimant's left wrist carpal tunnel syndrome. (*Id.*). Finally, the ALJ explained he included environmental limitations to account for Claimant's COPD.

Despite this extremely thorough RFC discussion concerning her physical impairments and limitations, Claimant contends the ALJ failed to account for her plantar callosity through the physical limitations imposed. The Court finds no error in the ALJ's analysis of Claimant's plantar callosity. As an initial matter, the Court notes the only evidence that Claimant has limitations resulting from her plantar callosity comes from Claimant herself, and as the Commissioner

correctly points out, Claimant does not challenge the ALJ's analysis of her subjective complaints. Nonetheless, the ALJ considered Claimant's foot impairment as part of the RFC discussion. The ALJ thoroughly discussed Claimant's testimony from the administrative hearings related to her foot pain, plantar warts, and subjectively alleged limitations. (R. 1085-86). The ALJ also noted Claimant's multiple foot surgeries, the diagnostic imaging of her left foot, and Dr. Sudduth's finding that Claimant had corns on her left foot. (R. 1088, 1091). In discussing this evidence, the ALJ noted that no further aggressive treatment was recommended or anticipated for Claimant's foot impairments. (R. 1088). Although the ALJ did not specifically state that Claimant's plantar callosity resulted in no functional limitations, the Court finds the ALJ's discussion was sufficient to follow his reasoning. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal . . . . [W]e cannot insist on technical perfection").

Likewise, the ALJ's decision regarding Claimant's mental impairments and limitations also satisfies the ALJ's narrative discussion requirements. The ALJ discussed Claimant's testimony from both administrative hearings, the Third-Party Function Reports completed by Claimant's friend and son, and as explained in Section V. A. 3. above, the findings of her treating, consultative, and reviewing physicians in the RFC discussion. (R. 1084-98). The ALJ correctly noted Claimant's mental health treatment largely consisted of psychotropic medications prescribed by her primary care physician, her mental status examinations were essentially within normal limits, and that Claimant was discharged from brief specialized mental health treatment because she failed to show for scheduled appointments. (R. 1091-92). The ALJ then explained how he translated Dr. Gunter's opinion that Claimant could "adapt to a work setting and some forewarned

changes in a usually stable work setting" into vocationally specific terms, and further explained that he included such limitations into the RFC to account for Claimant's "chronic mental symptoms," which necessarily includes Claimant's bipolar I disorder.[7] (R. 1098). The ALJ then rejected the opinions of record that limited Claimant to no contact with the general public, limiting her to occasional work-related interaction with the general public instead. The ALJ explained this limitation was more consistent with the longitudinal evidence of record, including Claimant's improved mental health symptoms with treatment, her overall level of cooperation with providers, her ability to meet a boyfriend, and her ability to go line dancing. (*Id.*). Thus, the ALJ considered all the evidence related to Claimant's mental impairments, including her bipolar I disorder, and explained how such evidence supported the RFC. Notably, Claimant fails to explain how her bipolar I diagnosis requires greater RFC limitations than the ALJ identified. *See Hinkle v. Apfel,* 132 F.3d 1349, 1352 (10th Cir. 1997) ("[T]he claimant must show more than the mere presence of a condition or ailment."). The longitudinal evidence in the record does not reflect further limitations. Because Claimant points to no evidence the ALJ overlooked, her arguments once again amount to a request that the Court reweigh the evidence and interpret in her favor. *See Hackett,* 395 F.3d at 1172.

Claimant's contention that the ALJ failed to properly consider the combined effect of her various impairments likewise fails. Claimant does not point to any evidence of record showing that her combined impairments result in greater functional limitations than the ALJ assessed. *See Eggleston v. Bowen,* 851 F.2d 1244, 1247 (10th Cir. 1998) (identifying nor error in considering the combined effect of the claimant's impairments where the ALJ addressed the claimant's impairments, and there was nothing to suggest they were not properly considered).

---

[7] The ALJ's analysis in reaching his RFC limitation for semi-skilled work is set forth in detail in Section V. A. 3. above.

### C. ALJ Did Not Err by Assessing a Less Restrictive RFC on Remand

Lastly, Claimant provides no support for her assertion that the ALJ was precluded from assessing a less restrictive RFC on remand than he reached in the initial decision. Claimant specifically takes issue with the ALJ's inclusion of a sit/stand option in his September 2017 decision, which he omitted from his October 2020 decision on remand. Claimant's argument is unpersuasive. Once again, the Court notes that none of Claimant's medical sources imposed a limitation for a sit/stand option. Moreover, there is no general requirement that an ALJ tasked with deciding a remanded claim is in any way bound by a prior decision that has been vacated. *See Miller v. Barnhart,* 175 Fed. App'x 952, 955-56 (10th Cir. 2006) ("Preclusion principles do not bind the ALJ to his earlier decision.") (internal quotations and citation omitted). On the contrary, the ALJ is encouraged to review "the record on remand, check[ ] initial findings of fact and mak[e] corrections, if appropriate." *Campbell v. Bowen,* 822 F.2d 1518, 1522 (10th Cir. 1987). Accordingly, the Court finds no error in the ALJ's reconsideration of Claimant's need for a sit/stand option on remand. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1224 (10th Cir. 2004) (stating that "[i]t was certainly within the ALJ's province, upon reexamining [Claimant's] record [after Appeals Council remand], to revise his RFC category"); *Mullanix v. Berryhill,* No. CIV-16-481-KEW, 2018 WL 1410593, at *3 (E.D. Okla. Mar. 21, 2018) ("No error is attributed to the change in the exertional level in the RFC between the ALJ's two decision.").

### VI. Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 30th day of September, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE